## AIR LINE PILOTS ASSOCIATION INTERNATIONAL, Plaintiff,

v.

## UNITED AIR LINES, INC., Defendant.

### No. 85 C 4765.

United States District Court,
N.D. Illinois, E.D.

June 7, 1985.

---

**244**

Cohen, Weiss and Simon, New York City, Michael E. Abram, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff.

Joel H. Kaplan, Valerie J. Hoffman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court is the defendant's motion to strike the plaintiff's prayer for injunctive relief in a labor dispute. For the reasons stated herein, defendant's motion is denied.

## I.  FACTS

Plaintiff Air Line Pilots Association, International ("ALPA") filed this suit for injunctive relief under the Railway Labor Act, as amended, 45 U.S.C. § 151 *et seq.* ("RLA"). The suit alleges that various conduct of defendant, United Air Lines, Inc. ("United") interfered with the collective bargaining negotiations between the parties resulting in a strike against United by ALPA. ALPA is the collective bargaining representative under the RLA for captains, first officers and second officers employed by United.

ALPA commenced its strike on May 17, 1985. The strike followed the parties' exhaustion of the mandatory negotiation and mediation procedures under the RLA and expiration of the 30-day statutory cooling-off period. 45 U.S.C. § 156. As its last official act immediately prior to the commencement of the cooling-off period, the National Mediation Board ("NMB") proffered its services to arbitrate the dispute. On the same day of the proffer, United rejected the arbitration proffer and the NMB officially terminated its services. ALPA did not accept the NMB proffer. The reasons for this nonacceptance are disputed.

The complaint alleges that United has engaged in a course of conduct both before and during the strike consisting of pervasive violations of basic rights of striking pilots under the RLA. ALPA seeks preliminary and permanent injunctive relief against United's unlawful conduct. The principal issue between the parties turned on rates to be paid to new hire pilots (the so-called "two tier" wage issue). While the parties have worked out a compromise on

the two-tier wage issue, there remains the issue of a back-to-work agreement and United's alleged unlawful conduct in relation to that agreement and its underlying negotiations.

## II. DISCUSSION

The key issues raised by the defendant's motion are (1) whether ALPA must accept the NMB proffer before going into court to obtain injunctive relief, even though United rejected the proffer, and (2) if so, did ALPA fail to make every reasonable effort to settle the dispute, before and during the strike, when it did not accept the NMB proffer.

█ It is well settled that a party seeking injunctive relief under the Railway Labor Act must comply with Section 8 of the Norris-La Guardia Act. 29 U.S.C. § 108. *Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27 v. Toledo, P. & W. R.R.*, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534 (1944) (*"Toledo R.R. "*). Section 8 of the Norris-La Guardia Act provides:

No restraining order or injunctive relief shall be granted to any complainant who has failed to ... make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

This provision is almost identical to Section 2, First, of the RLA, which imposes on all parties the duty to make every reasonable effort to settle the dispute. 45 U.S.C. § 152, First. Since Section 8 is congruent with the RLA, the party seeking injunctive relief under the RLA should be held to Section 8's requirements. *Local 553, Transport Workers v. Eastern Air Lines*, 695 F.2d 668, 679 (2d Cir.1982).

The Supreme Court in *Toledo R.R., supra,* held that Section 8 would bar a complainant from injunctive relief if he had not submitted the dispute to arbitration. *Toledo R.R., supra,* 321 U.S. at 63, 64 S.Ct. at 420; *Elgin, Joliet and Eastern Railway Company v. Brotherhood of Railroad Trainmen*, 302 F.2d 540 (7th Cir.), *cert. denied*, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962). In *Toledo R.R.*, the railroad, which sought the injunctive relief, refused to agree to arbitration while the union agreed to arbitrate the dispute. In reversing an injunction issued in the railroad's favor, the Supreme Court held:

Arbitration under the Railway Labor Act was available, afforded a method for settlement Congress itself has provided, and until respondent accepted this method it has not made "every reasonable effort to settle" the dispute, as Section 8 requires.

321 U.S. at 65, 64 S.Ct. at 421.

█ United interprets *Toledo R.R.* as an absolute bar to injunctive relief where the complainant fails to accept proffered arbitration. ALPA counters that *Toledo R.R.* does not apply in a case where, as here, the complainant's opponent has already rejected proffered arbitration, especially in light of *Brotherhood of Ry. and S.S. Clerks v. Florida East Coast Ry. Co.*, 384 U.S. 238, 86 S.Ct. 1420, 16 L.Ed.2d 501 (1966) (*"Florida East Coast "*). While neither *Toledo R.R.* nor *Florida East Coast* are directly on point, the Court rejects United's broad interpretation of *Toledo R.R.* and adopts a more flexible interpretation of the "clean hands" requirement to arbitrate embodied in Section 8. Therefore, the Court holds that where, as here, its opponent has rejected proffered arbitration after both sides complied with the other requirements of the Railway Labor Act, a complainant will not be barred from obtaining injunctive relief merely because it failed to accept the arbitration proffer.

The Court finds support for its flexible interpretation of Section 8 in the language of *Florida East Coast.* In that case, while the parties were still under a collective bargaining agreement, they rejected arbitration after exhaustion of negotiation and mediation efforts. Thereafter, the union commenced a lawful strike. In a footnote, the Supreme Court pointed out that the case was not governed by *Toledo R.R.* and its bar to injunctive relief because both the union and the employer had rejected proffered arbitration prior to the strike. *Flor-*

*ida East Coast, supra,* 384 U.S. at 247 n. 8, 86 S.Ct. at 1425 n. 8.

While the language in footnote 8 in *Florida East Coast* is arguably dicta, it provides a strong indication of how the Supreme Court would interpret *Toledo R.R.* and Section 8 in this case. This flexible interpretation of Section 8 and narrower interpretation of *Toledo R.R.* also finds support in *Piedmont Aviation, Inc. v. ALPA,* 416 F.2d 633 (4th Cir.1969). In that case, both parties to the labor dispute either rejected or did not respond to proffered arbitration. The Fourth Circuit Court of Appeals distinguished *Toledo R.R.* from the case before it on the same grounds which the Supreme Court discussed in footnote 8 in *Florida East Coast.* In so holding, the Fourth Circuit pointed out:

> The second distinction between this case and *Toledo* lies in the fact that here the union has not accepted arbitration, while in *Toledo* it did. The materiality of this distinction is suggested by *Brotherhood of Ry. & S.S. Clerks v. Florida E.C. Ry.,* 384 U.S. 238, 247 n. 8 [86 S.Ct. 1420, 1425 n. 8, 16 L.Ed.2d 501] (1966). There the Court noted that neither party accepted arbitration before the strike, but nevertheless it allowed the employer conditional relief to which it would not have been entitled had the *Toledo* rule been applied.

416 F.2d at 638–39.

In light of *Florida East Coast* and *Piedmont Aviation,* the Court holds that ALPA was not required to accept the NMB's proffer of arbitration after United had rejected it. This conclusion is consistent with notions of fairness and common sense embodied in the rule that a mere formality or the requirement to do that which is futile should not bar a litigant from the relief it seeks. In addition, this conclusion falls within a common sense definition of "reasonable efforts" to settle disputes under the RLA and Section 8 of the Norris-La Guardia Act. It would be an empty gesture and not commensurate with common sense to require the complainant to accept the proffer as a "reasonable effort" when the effort is doomed to failure by virtue of the opponent's rejection of the proffer. Therefore, the Court will not require a complainant to accept a proffer, which its opponent has already rejected, in order to comply with the reasonable efforts requirement of Section 2, First of the RLA, and Section 8 of the Norris-La Guardia Act.

Finally, even if a broader interpretation of *Toledo R.R.* should prevail, the Court finds that ALPA has satisfied the reasonable efforts requirement by its negotiation prior to and during the strike. These continuing efforts are best evidenced in the settlement of the two-tier wage issue. ALPA has met repeatedly at the bargaining table, has attempted to work out a compromise, and has achieved a compromise on the two-tier wage issue. These actions point to a continuing desire to make reasonable efforts to settle the dispute under Section 8 of the Norris-La Guardia Act and Section 2, First, of the RLA. *Local 553, supra,* 695 F.2d at 679.

### III. CONCLUSION

For the reasons stated above, defendant's motion to strike the plaintiff's prayer for injunctive relief is denied.

IT IS SO ORDERED.